Herman H. KAPLAN, Plaintiff,

v.

MAY STERN & COMPANY, a Pennsylvania Corporation, Defendant.

Civ. A. No. 74–227.

United States District Court, W. D. Pennsylvania.

March 4, 1977.

Harry J. Gruener, Pittsburgh, Pa., for plaintiff.

William M. Wycoff, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

Plaintiff Herman H. Kaplan brought this action against his former employer, May Stern & Company, invoking jurisdiction pursuant to 15 U.S.C. § 4, 28 U.S.C. § 1332(a)(1) and 28 U.S.C. §§ 2201 and 2202. He alleges that he was coerced into executing the employment contracts annexed to the complaint; that said contracts are in restraint of trade in violation of the anti-trust laws, and that pursuant thereto he

involuntarily contributed $32,500 into a deferred compensation fund into which the defendant contributed $16,250. He alleges the coercion constituted "extreme and outrageous tortious conduct" which caused him to suffer extreme emotional distress and was part of a scheme to deprive him of the opportunity to participate in a pension or profit-sharing plan of the defendant. He asks the court to declare the contracts invalid and to enter judgment in the amount of $146,250.00 together with attorneys' fees and costs pursuant to 15 U.S.C. § 15, or, in the alternative, to enter judgment in the amount of $48,750 together with interest and punitive damages.

The defendant moved for summary judgment "for the reason that under the undisputed facts plaintiff has failed to state a claim that the provisions of the employment agreements have restrained interstate trade or commerce." We agree, and to that extent summary judgment will be entered.

No *per se* violation of the anti-trust law is alleged. There is no contract, conspiracy, or combination involving defendant and any third-party or parties. No price fixing, division of markets, group boycotts, or tying arrangements are alleged.[1]

It appears from the depositions and pretrial stipulation filed by the parties that plaintiff was employed by defendant from 1960 to 1972. He was promoted to vice president in 1966, and entered into a written employment contract containing a deferred compensation plan designed to provide substantial retirement income to a long-time employee of major importance to the company and to provide an incentive for such employee to remain with the company.

The first employment contract was dated February 1, 1966 and executed July 28, 1966. Four subsequent contracts were executed,[2] each increasing plaintiff's salary,

---

1. Prior to filing this action, plaintiff brought a lawsuit against the defendant in the Common Pleas Court of Allegheny County in the form of a declaratory judgment action. The state court action has been voluntarily dismissed by the plaintiff. (Tr. p. 30).

2. Copies of the employment contracts are attached to the complaint and marked Exhibits A through E.

but otherwise containing the same provisions as the first contract. In 1972, plaintiff resigned and accepted employment at a higher salary with Marlo Furniture Company in Washington, D. C.

The plaintiff was required to sign these contracts if he desired to be retained as vice president at the salaries stipulated, and he was required to waive participation in a pension plan in effect for middle management employees of defendant.

Pursuant to the deferred compensation plan, the plaintiff contributed to the fund 50% of any annual bonus declared by defendant,[3] and the defendant contributed to the fund an additional sum equal to 50% of the plaintiff's contribution. During the period from 1966 to 1972, plaintiff contributed $32,500 and the defendant contributed $16,250, making the total of $48,750. The bonus funds so contributed were commingled with the general corporate revenues. Plaintiff did not have to pay income tax on these bonus contributions. No interest accrued on them. The plaintiff could not withdraw money from the fund as long as he remained an employee of defendant.

The amount of the annual bonus was fixed by defendant in its sole discretion; no bonus was mandated. Although there is considerable doubt, we assume the deferred compensation plan was contributive to the extent of the $32,500 which was included in the fund from the bonuses awarded to the plaintiff.[4]

The employment contract provided that the deferred compensation would be forfeited under the following contingencies: (a) If within two years of his leaving the defendant's employ, the plaintiff worked for any retail department store or speciality store with gross annual sales in excess of one million dollars and in any city of the United States having a population of more than 200,000 without first having procured the written consent of the employer; or (b) if within three years of leaving the defendant's employ, the plaintiff were to work for any retail department or speciality store with gross annual sales in excess of one million dollars in any city in which the defendant maintains a retail store without first having procured the written consent of the defendant.

Written permission for plaintiff to accept employment with Marlo Furniture Company in Washington, D. C. as of September 1, 1972, was given by defendant in a letter dated August 25, 1972.

The above-mentioned provisions providing for forfeiture if plaintiff accepted other employment are now moot.[5] Since September, 1972, plaintiff has retained his employment with Marlo Furniture Company.

Plaintiff has admitted that in each year since leaving defendant he has earned a

---

**3.** The total of the annual bonuses declared was $65,000. Plaintiff's annual salary rose from $18,000 in 1966 to $22,000 in 1971.

**4.** Paragraphs 5 and 6 of the Pre-trial Stipulation read as follows:
  "5. Between 1966 and 1972 the employer and the employee contributed to the fund a total of $48,750.00.
  "6. During the period 1966 through 1972 the plaintiff contributed $32,500.00 and the defendant contributed $16,250.00 to the fund."
  On February 8, 1977, subsequent to oral argument on the motion for summary judgment, defendant filed a "Motion to Withdraw Paragraphs 5 and 6 of the Pre-trial Stipulation," alleging that the use of the word "contributed" creates an improper inference since the facts demonstrate that no money was actually contributed by the plaintiff. The defendant argues that the stipulation should indicate instead that

the money was credited to the plaintiff under the plan. Plaintiff opposes withdrawal of the stipulation.
  The applicable provision in the employment contracts reads as follows:
  "4. For his services performed hereunder, the Employer shall pay the Employee and the Employee shall accept:
  (a) A basic compensation at the rate of $_____ per annum, payable monthly on the last of each month in which such services were fully performed.
  (b) Such bonus or other payments, if any, as may be awarded by the Employer in its sole discretion. Of the sum so awarded, 50% (or more if the Employee so elects) shall be included in a deferred compensation fund. The sum so included shall be matched by the Employer in an amount equal to 50% of such sum."

**5.** Cf. 6A Moore's Federal Practice ¶ 57.13.

larger salary than when he was employed by the defendant.[6]

Paragraph 4(c) of the employment contract provided, *inter alia*, that after plaintiff ceased to be employed by defendant, payment of the amount obligated to plaintiff would be made in 15 equal annual installments subject to the aforesaid contingencies.

In addition Paragraph 5 of the contract provided that each year's deferred payment was to be eliminated or reduced to the extent that the plaintiff's business earnings for the year when added to the amount of the contingent payment would exceed 75% of the average of the plaintiff's base salary for the last three years of his employ with the defendant.

Since plaintiff admitted that in each of the five years since leaving the defendant he has earned a greater amount of income than when he was employed by defendant, as of now he is not entitled to any deferred compensation payments.

We hold not only that the two restrictive covenants in the deferred compensation plan that would have effected a forfeiture of plaintiff's right to deferred compensation payments had he taken a job without written permission from defendant are now moot, but also that a restrictive covenant which effects a forfeiture in a deferred compensation plan is not actionable under the anti-trust laws. The forfeiture provisions and the covenants not to compete are germane to the deferred compensation plan but not to that part of the contract pertaining to employment.

Plaintiff did not agree as a condition to his employment that he would not go to work for a competitor for a period of two or three years. There is no express covenant not to compete in any of the employment contracts signed by the plaintiff.

Under the contracts sub judice the plaintiff was and is free to work for any competitor of defendant that he desires. He was not subject to a covenant not to compete. Under the contracts the defendant has no right to sue any person or company that hires plaintiff. There is no restraint on competitive employment. The provisions providing for forfeiture of deferred compensation for engaging in subsequent competitive employment are valid even though unrestricted in time or geography. Likewise the provision for forfeiture contained in Paragraph 5 is a valid attempt to encourage plaintiff to remain in the services of the defendant. The restrictive employment covenants did not in any way interfere with plaintiff's ability to find and retain other employment if he so desired.[7]

In our opinion the anti-trust laws have not been violated.

An appropriate order will be entered.

---

**6.** Plaintiff refused to provide defendant with a copy of his income tax return as provided in the employment contract.

**7.** Cf. *Golden v. Kentile Floors, Inc.* 512 F.2d 838 (5th Cir. 1975); *Rochester Corporation v. Rochester,* 450 F.2d 118, 122–123 (4th Cir. 1971); *Austin v. House of Vision, Inc.,* 404 F.2d 401 (7th Cir. 1968); *Gumerove v. Feature Ring Co., Inc.,* 1976–1 CCH Trade Cases ¶ 60,787 (S.D.N.Y.1976); *Mastandrea v. Gurrentz International Corporation,* 65 F.R.D. 52 (W.D.Pa. 1974); *Graham v. Hudgins, Thompson, Ball & Associates, Inc.,* 319 F.Supp. 1335 (N.D.Okl. 1970).